IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CARPENTERS PENSION TRUST FUND OF KANSAS CITY, et al.,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **INDUSTRIAL MAINTENANCE OF TOPEKA, INC.,** <br><br> **Defendant.** | Case No. 21-2208-DDC-GEB |

### MEMORANDUM AND ORDER

Before the court is plaintiffs' "Motion for Temporary Restraining Order and/or Preliminary Injunction" (Doc. 31) and supporting memorandum (Doc. 32).[1] Defendant Industrial Maintenance of Topeka responded. Doc. 44. And, plaintiffs replied. Doc. 45.

### I. Background

In May 2021, plaintiffs Carpenter Pension Trust Fund of Kansas City, and others—sued defendant for allegedly violating the Employee Retirement Income Security Act (ERISA). *See* Doc. 1. Plaintiffs allege that defendant failed to pay its carpenter employees appropriate benefits for hours worked from October 1, 2017 through December, 31, 2020 (as required by the applicable "collective bargaining agreements and Trust agreement"). *See* Doc. 22 at 5–11.

---

[1] The court notes that plaintiffs label their motion as one seeking either a temporary restraining order or a preliminary injunction or both. Doc. 31 at 1. But plaintiffs' motion only recites the legal standard for a preliminary injunction (Doc. 32 at 3). Defendant's Response does the same (Doc. 44 at 2). And then, plaintiffs' Reply shortens the request to a "Motion for a Preliminary Injunction" under Rule 65 (Doc. 45 at 1). Thus, the court too sticks to the term preliminary injunction. This district treats the two standards interchangeably anyway. *See Sac & Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 907 (D. Kan. 1995) (explaining that when "addressing a motion seeking a temporary restraining order," the court "follows the same procedure as for a preliminary injunction motion").

Although alleged breaches of contract give rise to this lawsuit, the contracts at issue aren't between the parties. Instead, plaintiffs are third party beneficiaries of contracts between the St. Louis-Kansas City Carpenters Regional Council Affiliated with the United Brotherhood of Carpenters and Joiners of America (Union) and defendant. Doc. 44 at 1; Doc. 45 at 1. Plaintiffs assert that Section 515 of ERISA mandates defendant make fringe benefit contributions to plaintiffs in accordance with the terms and conditions of the "collective bargaining agreements and Trust Agreement" it entered with its employees. Doc. 22 at 5–6 (First Am. Compl. ¶¶ 16–17).

The issue now before the court—a preliminary injunction—arose from an unexpected turn in this case last spring. While discovery in the case was underway, the court set a May 2, 2023 bench trial date, originally. Doc. 18. And, on April 29, 2022, the parties filed a Joint Mediation Notice, informing the court that they planned to participate in a May 12, 2022 mediation. Doc. 23. Unfortunately, just a few days later, on May 4, 2022, a fire destroyed defendant's headquarters in Topeka, Kansas. Doc. 24 at 1. Defendant moved to stay the case and extend all deadlines. *Id.* The court conducted a telephone conference to discuss this motion, and then it relieved the parties of their obligation to mediate as scheduled. Doc. 27. The court then ordered plaintiffs to produce documents associated with "the full audit" (plaintiffs conducted an audit of defendant's records covering October 1, 2017 through December 31, 2020); and it ordered defendant to produce its general liability/commercial property insurance policy. *See* Doc. 27; *see also* Doc. 32 at 2; Doc. 32-1 (Insurance Policy).

Following the fire, the court extended the case's deadlines—*i.e.*, final pretrial conference set for February 3, 2023, dispositive motions due February 17, 2023, and a court trial for November 7, 2023. Doc. 30. In the meantime, plaintiffs ask the court to enter an order

preventing the insurance company from paying defendant the proceeds (payable from the fire) until it decides the case on the merits. Doc. 32 at 9.

## II. Legal Standard for Preliminary Injunction

Federal Rule of Civil Procedure 65(a) authorizes federal district courts to issue preliminary injunctions. The relief afforded under Rule 65 embraces a limited purpose—a court issues a preliminary injunction "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The Tenth Circuit instructs that the moving party—here plaintiffs—must satisfy four factors to deserve a preliminary injunction: "(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest." *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) (quoting *Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013)). The court enjoys broad discretion to decide whether to grant a preliminary injunction. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (citations omitted).

A preliminary injunction is an extraordinary remedy. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). So, the moving party must demonstrate a "clear and unequivocal" right to such relief. *Petrella v. Brownback*, 787 F.3d 1242, 1256 (10th Cir. 2015) (quoting *Beltronics, USA*, 562 F.3d at 1070). "In general, 'a preliminary injunction . . . is the exception rather than the rule.'" *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (quoting *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)). For reasons explained below, the court concludes, plaintiffs haven't shouldered their burden for such an extraordinary remedy.

**III.     Jurisdiction to Grant a Preliminary Injunction**

Before reaching the parties' arguments on the merits, the court first addresses defendant's argument that the court lacks jurisdiction to award the relief plaintiffs seek. Defendant argues that the court lacks jurisdiction to issue a preliminary injunction because this case involves a "labor dispute"—a jurisdictional carve out under applicable federal law. Doc. 44 at 11–13. Under the Norris-LaGuardia Act (NLA), federal courts lack jurisdiction "to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter . . . ." 29 U.S.C. § 101. Plaintiffs and defendant disagree whether this case is one "involving or growing out" of a labor dispute as defined by the NLA.

Plaintiffs argue this case doesn't present a "labor dispute" and thus, the court retains jurisdiction to issue a preliminary injunction. Doc. 45 at 5. They argue that because the pending action isn't between employers and employees or associations of employees—instead, it's between "an employer and fringe benefit trust funds"—defendant's jurisdictional argument fails. *Id.*

> The pertinent portion of the NLA explains that:
>
> A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is . . . (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

29 U.S.C. § 113(a). Section 113 defines "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in

4

negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c). This statute provides that a "person or association [is] a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein[.]" 29 U.S.C. § 113(b).

Defendant argues that the court lacks jurisdiction because this case arises from a dispute about collective bargaining agreements between defendant and its employees—which, it argues, qualifies as a "labor dispute" under the NLA. *See* Doc. 44 at 13. Plaintiffs disagree. They argue that the case is not one between employer and employee (or "associations of either employers and employees"), and thus doesn't arise from a labor dispute. Doc. 45 at 5.

The court agrees. This case isn't one between employer and employee, or associations of either, but its inquiry doesn't end there. This case "involves persons who are engaged in the same industry . . . or have direct or indirect interests therein." 29 U.S.C. § 113(a). Plaintiffs, as third-party beneficiaries to defendant's contracts with its employees, have indirect interests in the defendant's industry. So, this case qualifies as "involv[ing]" or "grow[ing] out of a labor dispute" if it "involves any conflicting or competing interests in a 'labor dispute[.]'" 29 U.S.C. § 113(a).

The next question for the court, then, is whether the case concerns "terms or conditions of employment" or "the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment" under 29 U.S.C. § 113(c) (definition of "labor dispute"). Here, plaintiffs seek judgments against defendant for unpaid fringe benefit contributions as well as an order from the court requiring defendant to

"specifically perform all provisions of the current and future collective bargaining agreements and Trust Agreement, as amended, *in respect to the reporting and payment of fringe benefit contributions to [p]laintiffs*[.]" Doc. 22 at 7 (First Am. Compl. ¶ I.) (emphasis added). Plaintiffs' requests are specific to fringe benefit contributions—they don't seek to negotiate terms or conditions of employment. *See San Diego Police Officers' Ass'n v. Aguirre*, No. 05-CV-1581 H(POR), 2005 WL 3180000, at *10 (S.D. Cal. Nov. 5, 2005) (holding that claims involving allegations about "the failure to fund the retirement fund and unlawfully depriving, eliminating and/or reducing retirement benefits" didn't constitute a "labor dispute" under the NLA). Thus, the court concludes that defendant hasn't shown this matter concerns a "labor dispute" under the NLA.

      Defendant asserts its jurisdiction argument last, as section "e." in its brief. And it essentially lists statutes without explaining why this case qualifies as a "labor dispute" under the applicable law. Doc. 44 at 11–13. It also doesn't raise its jurisdiction argument until *after* briefing the preliminary injunction issue on the merits. *See id.* Plaintiffs' brief does even less—it devotes four sentences to the subject but none of them cite legal authority. Doc. 45 at 5. With the slim arguments presented, and after conducting its own research on the NLA's applicability, the court concludes that defendant's jurisdiction argument can't carry the day. The issue is of little significance anyway because, the court concludes that plaintiffs aren't entitled to any injunctive relief, for reasons explained below. *See C.E. Harris, Inc. v. Int'l Bhd. of Elec. Workers Loc. 595*, No. 13-CV-05207-WHO, 2013 WL 6252485, at *8 (N.D. Cal. Dec. 3, 2013) (concluding that the court "need not decide whether the Norris-LaGuardia Act bars [it] from issuing an injunction because [the moving party wasn't] entitled to a temporary restraining order or preliminary injunction in any event").

IV. Analysis

Plaintiffs argue that the court possesses "broad injunctive authority" under ERISA to protect "the contributions" to its funds, that plaintiffs allege defendant owes them. Doc. 32 at 3. Plaintiffs urge the court to freeze the insurance payout so that plaintiffs eventually can recover damages in this lawsuit. Without injunctive relief, they argue, they must litigate against a corporate shell. Plaintiffs assert that the four preliminary injunction factors weigh in favor of granting injunctive relief. Defendant disagrees. The court addresses each factor, below.

**A. Do plaintiffs show a likelihood of success on the merits of their claims?**

When the requested injunctive relief is one that alters the status quo, the relief is disfavored and requires the injunction movant to make a "'strong showing'" of both the likelihood of success on the merits and that the balance of the harms favors issuing the requested injunction. *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 697 F.3d 1259, 1266 (10th Cir. 2012) (quoting *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 n.1 (10th Cir. 2010)). Here, plaintiffs seek injunctive relief that, among other things, would prohibit defendant from collecting insurance money. This relief would alter the status quo. To secure the requested injunctive relief, plaintiffs thus must make a strong showing that they are likely to succeed on the merits. *See Gen. Motors Corp.*, 500 F.3d at 1227 (explaining that the moving party must make a strong showing on the likelihood of success on the merits because the requested injunctive relief sought to halt production of defendants' products). For the reasons explained below, plaintiffs haven't shouldered this burden.

Plaintiffs filed this suit under Sections 502 and 515 of ERISA. Doc. 22 at 2 (First Am. Compl. ¶ 1). They allege that defendant violated Section 515 of ERISA when it failed to make fringe benefit contributions to its employees (as allegedly required by the relevant "collective

7

bargaining agreements and Trust agreement" between defendant and its employees). *Id.* at 5–6 (First Am. Compl. ¶ 16). Under Section 502(g) of ERISA, plaintiffs claim that they are entitled to a mandatory award of these unpaid fringe benefit contributions and interest as well as liquidated damages and reasonable attorneys' fees and costs. *Id.* at 6 (First Am. Compl. ¶ 17).

Essentially, plaintiffs' ERISA argument goes like this: Plaintiffs and defendant are bound by the same collective bargaining agreements (CBAs). Doc. 32 at 6. And, plaintiffs allege, these CBAs obligate defendant to make contributions to plaintiffs for work that defendant's non-union employees performed. *Id.* In support of this assertion, plaintiffs cite four cases and state that the CBAs "at issue in this case are all but identical to the four above cited cases." *Id.* at 7. They also cite a recent Western District of Missouri opinion holding that non-union employees were covered under "the exact same Builders' collective bargaining agreement which is one of the governing agreements in this case." *Id.* Plaintiffs follow up with a conclusory statement that although only one CBA in their case is the same, "the same logic applies to all" the CBAs here. *Id.*

Defendant responds, arguing that plaintiffs fail to show any likelihood of success on the merits. It characterizes the dispute as one "over what agreement if any [d]efendant has with the union." Doc. 44 at 7. And it asserts that a fully executed and effective written agreement between it and the union doesn't exist, instead a different verbal agreement exists. *Id.* Defendant also argues that the results of plaintiffs' earlier audits help its case. Plaintiffs argue these audits aren't relevant to the dispute here. But, the court doesn't reach the parties' disagreement about the relevance of these audits because it agrees with defendant. Plaintiffs haven't made a showing of likelihood of success on the merits. First and foremost, the parties disagree about the identity of the contract governing defendant's relationship with its employees.

8

So, even if plaintiffs had asserted convincing legal arguments about the CBAs, they still haven't shown that those CBAs govern the parties. In sum, plaintiffs haven't shouldered their burden to make a strong showing of a likelihood of success on the case's merits. Thus, this first factor weighs against awarding injunctive relief.

### B. Will plaintiffs suffer irreparable harm in the absence of a preliminary injunction?

Because the court concludes that plaintiffs haven't established a likelihood of success on the merits, it could end the analysis here since plaintiffs haven't shouldered the burden necessary for securing injunctive relief. Nevertheless, the court briefly considers the other requirements for a preliminary injunction and concludes that plaintiffs cannot satisfy them either.

A plaintiff establishes irreparable harm by demonstrating "'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'" *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). A claim of "[p]urely speculative" harm does not suffice. *Id.* Instead, a plaintiff must show that "'significant risk of irreparable harm'" is present to meet the burden. *Id.* (quoting *Greater Yellowstone*, 321 F.3d at 1258). Moreover, wholly conclusory statements do not amount to irreparable harm. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004).

Plaintiffs assert that they will suffer irreparable harm unless the court freezes the insurance payout because defendant—in an allegedly "questionable financial condition"—might "dissipate[]" that insurance money before plaintiffs can recover damages in this lawsuit. Doc. 32 at 4. They argue that the failure to receive contributions renders each plaintiff trust less capable of paying benefits. *Id.* And, this failure to receive money, they argue, could deteriorate their operations. *Id.* at 5.

Defendant argues plaintiffs' theory of irreparable harm is inadequate for two main reasons. First, it asserts that plaintiffs delayed seeking an injunction—the fire occurred May 4, 2022 and plaintiffs filed their motion July 7, 2022. This lapse in time, defendant argues, weighs against concluding that plaintiffs will suffer irreparable harm in the absence of a preliminary injunction. Next, defendant argues that plaintiffs fail to show irreparable harm because they only seek monetary damages. Doc. 44 at 3, 6. Defendant asserts that it continues to pay its employees, including union employees, it continues to provide services to clients and operate other facilities—in other words, plaintiffs haven't shown that defendant is in the "questionable financial condition" they allege it is. *Id.* at 4. Thus, defendant asserts, plaintiffs haven't shown that they face harm that defendant can't later compensate them with monetary damages.

The court agrees with defendant. *See Greater Yellowstone Coal.*, 321 F.3d at 1258 (holding that the "irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact by monetary damages") (citation and internal quotation marks omitted); *Dominion Video Satellite, Inc.*, 356 F.3d at 1261 (reversing preliminary injunction against satellite television broadcaster that was based on "wholly conclusory" statement that the alleged breach of exclusivity provisions of parties' transponder lease agreement would cause irreparable harm). Plaintiffs' argument about defendant's potential future financial position is no more than a conclusory statement. They never demonstrate a present threat of irreparable harm.

C. **Does potential harm to plaintiffs outweigh potential harm defendant will sustain if the court grants a preliminary injunction?**

Absent a showing of irreparable harm to plaintiffs, the balance of harms swings in defendant's favor. Plaintiffs argue that the threat of irreparable harm—defendant's potential inability to contribute to their funds, and in turn plaintiffs' potential inability to meet their

obligations to provide retirement and welfare benefits—outweighs any harm defendant might face if the court issues the injunction. Doc. 32 at 5. Plaintiffs contend that the only harm the preliminary injunction would impose on defendant is a "lack of cash assets" until this lawsuit ends. *Id.* They argue that their need to maintain the proceeds of their funds outweighs any immediate need for the insurance money defendant might allege. *Id.* at 5–6.

Plaintiffs maintain that defendant "has continued its offsite business operations without" the insurance proceeds, so, defendant doesn't need the money to operate; and thus, won't face irreparable harm. Doc. 32 at 5 (referring to statements made in a May 6, 2022 status conference). Plaintiffs place themselves in a tough spot—arguing both that defendant's current financial position is too fragile to recover from *and* that defendant is liquid enough that this proposed injunction withholding funds won't harm its business.

An injunction will harm defendant because it will preclude defendant from collecting insurance proceeds. Preventing defendant from accessing the insurance proceeds would prevent it from rebuilding, returning to normal operations, and possibly prevent it from maintaining employees. That potential harm is tangible, and it outweighs any of plaintiffs' potential harms. Thus, on balance, the potential hardship to plaintiffs doesn't outweigh the likely hardship defendant will suffer if the court issues the requested injunctive relief. *See Gen. Motors Corp.*, 500 F.3d at 1229 (affirming the denial of plaintiff's motion for preliminary injunction and holding that the district court "properly considered the financial hardship to [defendant] that would result from a preliminary injunction"); *see also Buca, Inc. v. Gambucci's, Inc.*, 18 F. Supp. 2d 1193, 1211 (D. Kan. 1998) (denying a motion for preliminary injunction because the requested injunctive relief would disturb the status quo and seriously impair defendant's ability to continue operating).

Both parties correctly point out that federal courts disfavor injunctions that would change the status quo. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). Plaintiffs argue that imposing the preliminary injunction would maintain the status quo by "preventing the dissipation of the insurance proceeds." Doc. 32 at 5. That's just wrong. Prohibiting defendant from collecting insurance money is not maintaining the status quo. Issuing the requested injunction would use federal judicial power to interfere with a contract between defendant and its insurer—one that has nothing to do with plaintiffs' claims before the court. Thus, this third factor weighs against a preliminary injunction.

### D. Is the requested preliminary injunction adverse to the public good?

Finally, the parties disagree which side has the better public interest argument. Plaintiffs argue that issuing the preliminary injunction will further public interests "by promoting the financial integrity of employee benefits as contemplated by ERISA." Doc. 32 at 8. Defendant argues that issuing the requested injunction would violate Kansas law and defendant's right to due process. The court doesn't need to unravel these arguments because plaintiffs haven't made the requisite showing that the public interest factor favors their request. Plaintiffs will have the chance to promote the underlying purpose of ERISA when they litigate the merits of their case. Nothing permits, much less warrants, to advance that decision to this preliminary stage.

### V. Conclusion

The court concludes that plaintiffs haven't shouldered the burden imposed by the four requirements for a preliminary injunction. Plaintiffs don't deserve the injunction sought by their motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's "Motion for Temporary Restraining Order and/or Preliminary Injunction" (Doc. 31) is denied.

**Dated this 31st day of January, 2023, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**

13